**SO ORDERED.**

**SIGNED this 12 day of February, 2014.**



_____
A. Thomas Small
United States Bankruptcy Court Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                                                    CASE NO.

**MCDONNELL HORTICULTURE, INC.**                         12-09009-8-ATS

        DEBTOR

### ORDER REGARDING OBJECTION TO CLAIMS

The matter before the court in this chapter 11 case is the objection filed by Carolina Farm Credit, ACA ("CFC") to the secured and unsecured claims of Rippin & Stavin, Inc. A hearing was held in Raleigh, North Carolina on January 31, 2014.

The court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B) which the court may hear and determine.

McDonnell Horticulture, Inc., a nursery business located in Cameron, North Carolina, filed a petition for relief under chapter 11 of the Bankruptcy Code on December 12, 2012. Rippin & Stavin filed a proof of claim (Claim #7 ) in the amount of $1,813,656.05. The claim is based on two notes, in the amounts of $1,000,000 and $1,648,048.34, arising from the sale of the nursery business to McDonnell in 2003. Attached to the proof of claim were the two notes and a

security agreement that provided that the two notes were secured by McDonnell's inventory and accounts.

The debtor's plan of reorganization provided that Rippin & Stavin's claim would be treated as two claims: first, a $300,000 secured claim which was the sole claim in the plan's Class 4, and second, a $1,513,656.05 unsecured claim which was the sole claim in Class 4-A. The Class 4 secured claim was to be paid over 25 years in annual payments with an initial payment of $25,000 on the effective date of the plan, and the Class 4-A unsecured claim was also to be paid in annual installments over 25 years with no payments until July 2014. Rippin & Stavin voted to accept the plan, and the plan was confirmed on October 22, 2013. The order confirming the plan provided that objections to claims could be filed for 30 days after the plan's effective date, and a timely objection to Rippin & Stavin's secured and unsecured claims was filed by CFC.

McDonnell bought the business that it now operates pursuant to a purchase agreement with TBN Co. Inc. (which changed its name to Rippin & Stavin) and TBN Co. Inc.'s related entities, Thomas Brothers Nursery Co., Max Thomas, and Gary Thomas. What McDonnell purchased is described as a "woody ornamental plant" growing business consisting of plant inventory, various greenhouses, irrigation equipment, vehicles, associated agricultural equipment, and real property upon which the plant growing business was operated in Moore County, North Carolina. The real property, which was an essential part of this purchase, consisted of two tracts: one a 71-acre tract owned by Max and Gary Thomas, and the other a 144-acre tract owned by Thomas Brothers Nursery Co. The real property was conveyed as part

of the purchase transaction to Claddagh Land Company, LLC, a company owned by Patrick McDonnell who also owns the debtor.

The total purchase price for the transaction was $7,000,000. Of this amount, more than half was financed by CFC, which received a first lien position on the assets purchased to secure repayment. A part of the purchase price was also financed by the seller, Rippin & Stavin's predecessor TBN Co. Inc. As part of the sale, McDonnell executed the two notes of $1,000,000 and $1,648,048.34, which together form the basis of Rippin & Stavin's claim. Each note states that it is given as "part of the purchase price." To secure repayment of these notes, McDonnell executed a security agreement granting a security interest in its inventory and accounts. The security interest given to secure these notes is subordinate to the security interest of CFC.

Claddagh, which took title to the real property, executed two deeds of trust to secure the notes to TBN Co. Inc. The deed of trust on the 71-acre tract secured the $1,000,000 note, and the 144-acre tract secured $1,648,048.34 note. Both deeds of trust were inferior to the deeds of trust on these properties in favor of CFC.

CFC contends that the deeds of trust executed by Claddagh are purchase money deeds of trust and that North Carolina General Statute § 45-21.38, known as "the anti-deficiency statute," precludes Rippin & Stavin from asserting an unsecured claim against McDonnell. The statute provides:

In all sales of real property by mortgagees and/or trustees under powers of sale contained in any mortgage or deed of trust executed after February 6, 1933, or where judgment or decree is given for the foreclosure of any mortgage executed after February 6, 1933, to secure to the seller the payment of the balance of the purchase price of real property, the mortgagee or trustee or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same: Provided, said evidence of indebtedness shows upon the face that it is for balance of purchase money for real estate: Provided, further, that when said note or notes are prepared under the

direction and supervision of the seller or sellers, he, it, or they shall cause a provision to be inserted in said note disclosing that it is for purchase money of real estate; in default of which the seller or sellers shall be liable to purchaser for any loss which he might sustain by reason of the failure to insert said provisions as herein set out. (1933, c. 36; 1949, c. 720, s. 3; c. 856; 1961, c. 604; 1967, c. 562, s. 2.)

Rippin & Stavin argue that the anti-deficiency statute does not apply because Rippin & Stavin (or their predecessor TBN Co. Inc.) did not own the real property or sell it to McDonnell. "TBN Co., Inc. did not convey any real property to the Debtor and as such cannot be a purchase money creditor."  R&S Brief p. 7.

CFC maintains that this is merely form over substance, and that it cannot be denied that the real property was conveyed as part of a "global" sale involving assets owned by TBN Co., Inc. and its related entities.  The form of a transaction does matter, as where the transaction is a lease with option to purchase rather than a sale.  See  Green Park Inn, Inc. v. Moore, 562 S.E. 2d 53 (N.C. App. 2002).  Here, the sale was an essential and integral part *of an integrated sale* between TBN Co., Inc. and its related entities as seller, and McDonnell and its related entities as purchaser.  This is made clear by the purchase agreement and the notes that are the basis of Rippin & Stavin's claim.

The purchase agreement identifies the "Buyer" collectively as McDonnell Horticulture, Inc. and Claddagh Land Company, LLC, and the "Seller" collectively as Thomas Brothers Nursery Co., TBN Co., Inc., Max C. Thomas and Gary B. Thomas, and their wives Sandra Thomas and Jane Thomas.  Similarly, each note provides that it is "being issued pursuant to that certain Asset Purchase Agreement . . . by and among Payee [defined in the note as TBN Co., Inc.], Thomas Brothers Nursery Co., a North Carolina partnership, Max C. Thomas and Gary B. Thomas (collectively the "Sellers") and Claddagh Land Company, LLC, a North Carolina

limited liability company . . . and Maker [defined in the note as McDonnell Horticulture Inc.] and represents a portion of the purchase price being paid by Maker [McDonnell]."

These deeds of trust were given to secure a portion of the purchase price of the real property, and are purchase money deeds of trust to which the anti-deficiency statute applies.

Precisely *how* the statute applies, however, is not always apparent. See James A. Webster, Webster's Real Estate Law in North Carolina §§ 13.46[1]-[7] (4th ed. 1994) (statute source of many legal battles over interpretation; difficult to apply to myriad possible mortgage financing situations). It may seem unfair that the purchase money deeds of trust would prohibit deficiency claims for the entire transaction, when the purchase agreement allocated just $720,000 of the $7,000,000 purchase price to the sale of the real property, and the real property secured notes of $2,648,048.34. The statute, however, is broadly applied, see Adams v. Cooper, 460 S.E. 2d 120, 121 (N.C. 1995) and that interpretation is supported by the North Carolina Court of Appeals in Crocker v. Delta Group, Inc., 481 S.E. 2d 694 (N.C. App. 1997). There may have been advantages to Rippin & Stavin in the complicated way the financing of the transaction was structured, but this was not one of them.

Accordingly, that portion of Rippin & Stavin's claim that is designated in Class 4A in the debtor's confirmed plan is DISALLOWED.

The second aspect of CFC's objection relates to the portion of Rippin & Stavin's claim that is dealt with as a secured claim in Class 4 of the debtor's confirmed plan; specifically, a $300,000 secured claim to be paid over 25 years. CFC and Rippin & Stavin both voted to accept the plan that provided this treatment for Rippin & Stavin's secured claim.

CFC does not contend that Rippin & Stavin are precluded from pursuing its collateral, but, according to CFC, the collateral (inventory and accounts) that supports this claim, after considering the prior liens of CFC, has no value, and, consequently, Rippin & Stavin does not have a secured claim.  If Rippin and Stavin's claim is unsecured, then because of the anti-deficiency statute, Rippin and Stavin has no claim at all.

Specifically, with regard to value, CFC maintains that if the liquidation values contained in the debtor's disclosure statement are used to determine the value of the debtor's accounts and inventory, there is no value left for Rippin & Stavin's claim.  In response, Rippin & Stavin contend that because the debtor is continuing in business, the more appropriate standard to use is the "going concern" value.

On this point, Rippin and Stavin has the better argument.  CFC asks the court to take notice of the liquidation values in the debtor's disclosure statement, and maintains that those values shift the burden of proof to Rippin & Stavin to establish the value of its security.  The court was aware of the liquidation values in the disclosure statement when it confirmed the debtor's plan, and does not agree that liquidation value is the proper standard by which to determine the value of a secured claim where the debtor, as here, is continuing to operate its business.   A proof of claim constitutes prima facia evidence of the validity and amount of the claim.  Fed. R. Bankr. P. 3001(f).  CFC has offered no new evidence that would cause the court to change its opinion that Rippin & Stavin is entitled to a secured claim of $300,000 as provided for in Class 4 of the debtor's confirmed plan.  If the court were to re-examine the values supporting Rippin & Stavin's secured claim, it would in fairness have to examine the values supporting CFC's fully secured claim as well.

Accordingly, CFC's objection with respect to Rippin & Stavin's secured claim of $300,000 in Class 4 of the debtor's confirmed plan is DENIED.

**SO ORDERED**.

**END OF DOCUMENT**