**SO ORDERED.**

**SIGNED this 20 day of March, 2015.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                                          CASE NO. 12-09009-8-DMW

**MCDONNELL HORTICULTURE, INC.**

                                                                                              **CHAPTER 11**

                            **DEBTOR.**

### ORDER DENYING MOTION TO DISMISS AND
### ALLOWING MOTION FOR FINAL DECREE

This matter comes on to be heard upon (a) the Application for Final Decree filed by McDonnell Horticulture, Inc. ("Debtor"), and the response filed by the United States Bankruptcy Administrator ("BA"); and (b) the Motion of the Bankruptcy Administrator to Dismiss the Debtor's Case Pursuant to 11 U.S.C. § 1112(b), and the response filed by the Debtor. The court conducted a hearing in Raleigh, North Carolina on January 6, 2015. William P. Janvier, Esq. appeared for the Debtor, and Brian C. Behr, Esq. appeared on behalf of the BA. At the conclusion of the hearing, the court took the matter under advisement. Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

1.       This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this

matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on December 21, 2012.

3. On Schedule D filed with the court, the Debtor listed Carolina Farm Credit, ACA ("CFC") as a secured creditor with a first position lien on "[a]ll inventory, equipment, farm products, crops, fixtures, and accounts receivable" of the Debtor.

4. The court confirmed the Debtor's Chapter 11 Plan of Reorganization ("Plan") by an Order ("Confirmation Order") entered October 22, 2013. The Plan was attached as Exhibit A to the Confirmation Order.

5. Under the terms of the Plan, the Debtor was required to pay creditors "by continuing to operate [its plant] nursery and selling inventory." The Plan also stated that "Claddagh Land Company, LLC, an entity with common ownership, shall sell real estate [("Claddagh Property")] to pay certain jointly owned debts."

6. Section 7.2 of the Plan stated that CFC would have the right to require an auction if Claddagh Land Company, LLC failed to sell its property before November 20, 2014.[1]

7. Article XVIII of the Plan, entitled "Execution of the Plan," identified what action the Debtor would take in the event it failed to make payments to creditors as they became due under the Plan. Pursuant to Section 18.3 ("Default Provision"), if the Debtor failed to make a payment, and it was "not excused, postponed, modified, or waived," the Debtor would be required to "hire an auctioneer to liquidate its property."

---

[1] The Plan gave Claddagh Land Company, LLC one year from the Effective Date of the Plan to sell the Claddagh Property. The Effective Date of the Plan was November 20, 2013.

2

8.	The Debtor was ultimately unable to make payments as required by the Plan. CFC, as the first priority lienholder on the Debtor's personal property, chose an auctioneer to liquidate the Debtor's property as contemplated by the Plan. All of the Debtor's personal property has now been liquidated in accordance with the Default Provision, with the proceeds being paid to CFC.

9.	As a result of the default under the Plan, the Claddagh Property could have been sold at auction by Claddagh Land Company, LLC; however, the Plan also entitled CFC to pursue legal remedies under state law, such as foreclosure, under Article VII of the Plan. The Claddagh Property, sold pursuant to a foreclosure action on November 18, 2014, was transferred by two Trustee's Deeds recorded December 31, 2014 in the Moore County Registry.

10.	The Debtor asserts that this case should be closed under 11 U.S.C. § 350. The BA argues that the Debtor cannot have the case closed because the Debtor has not substantially consummated the Plan and is in material default under the Plan, and asserts the case should be dismissed for cause under § 1112(b)(4)(N). Neither party is advocating conversion of this case to one under Chapter 7, and the court agrees that conversion is not practical.

11.	<u>The Debtor has Fully Administered the Estate and Achieved Substantial Consummation</u>

    a.	<u>Section 350</u>. Section 350 states that "[a]fter an estate is fully administered . . . the court shall close the case." 11 U.S.C. § 350(a); *see* Fed. R. Bankr. P. 3022.

> Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have

3

commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022 advisory committee's note.

b. The third, fourth and fifth factors identified in the Rule 3022 Advisory Committee's Note are very similar to the requirements for substantial consummation under 11 U.S.C. § 1101(2). Pursuant to § 1101(2), substantial consummation occurs upon the debtor actuating the

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption . . . of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

c. Because the elements of substantial consummation are essentially encompassed in the standards for full administration of the estate, the court will address both concepts together.

d. As a preliminary matter, the Confirmation Order became final on November 6, 2013 (*see* Fed. R. Bankr. P. 8002(a)); the Plan did not require deposits (*see* Fed. R. Bankr. P. 3020); the Debtor assumed the business and continued its operations (until liquidation); and all motions, contested matters and adversary proceedings have been finally resolved, with the exception of those currently before the court.

e. Regarding the remaining two factors:

i. <u>The Property Proposed by the Plan to be Transferred has been Conveyed</u>. Although the Claddagh Property was not sold by private sale, the Claddagh Property was liquidated at foreclosure as contemplated by Section 7.2 of the Plan. Similarly, the Default Provision provided for the sale of the Debtor's

4

personal property and, pursuant to that section of the Plan, the Debtor transferred all of the Property proposed *by the Default Provision of the Plan* to be transferred.[2]

    ii.    <u>Payments Under the Plan have Commenced</u>.  Through continued operations prior to liquidation, the Debtor commenced distribution under the Plan. Under a substantial consummation analysis, courts in this District have held that distribution of payments under a plan needs to have commenced with respect to "all or substantially all" creditors. *In re Dean Hardwoods, Inc.*, 431 B.R. 387, 393 (Bankr. E.D.N.C. 2010).  In the Post Confirmation Report filed by the Debtor on July 31, 2014, the Debtor indicated compliance with the Plan payment terms regarding five of the six classes of creditors.  Payments commenced to those five classes no later than December 1, 2013 according to the Report.  Class 4, regarding which the Debtor reported noncompliance, was to be paid through any available proceeds from the voluntary foreclosure of the Claddagh Property. Even if Class 4 did not receive any proceeds from the sale of the Claddagh Property, the court finds that the Debtor had undertaken efforts to commence payments under the Plan by allowing for the foreclosure.  That action, contemplated by the Plan, is sufficient to satisfy substantial consummation requirements.

f.    At the hearing, the BA expressed the concern that closing the Debtor's case could have implications in other cases, specifically on the requirement that debtors

---

[2] In this District, payments to creditors made pursuant to a Chapter 11 plan are not treated as "property proposed by the plan to be transferred" (*see In re Dean Hardwoods, Inc.*, 431 B.R. 387, 393 (Bankr. E.D.N.C. 2010)), but the court finds that the sale of property pursuant to a liquidation default provision fits squarely within the language of § 1101(2) and the Fed. R. Bankr. P. 3022 Advisory Committee Note.

must pay quarterly fees until achieving substantial consummation. According to the BA, if the Debtor is allowed to have its case closed, despite the fact that not all classes have been paid according to the proposed treatment, other debtors will begin seeking closure before commencing payments to all classes. The court's finding is based on the specific facts, circumstances and language of the Debtor's Plan, and this ruling should not have any widespread effect on the quarterly fees requirements in this District.

  g. The court finds that the factors for determining full administration and the elements of substantial consummation have been satisfied. Because the Debtor has fully administered the estate, closure is appropriate under § 350.

12. <u>The Debtor Complied with the Terms of the Plan and is Not in Material Default</u>

  a. Although the Debtor failed to pay creditors according to the payment schedule contemplated in the Plan, the Debtor has complied with the agreed and confirmed Default Provision and has liquidated all of its property. The Plan contemplated that alternate treatment; therefore, the Debtor is not in material default. The Debtor implemented the alternate Plan treatment when the reorganization did not go as anticipated.

  b. The BA is concerned that the Default Provision did not specifically address the treatment of each class in the event an auction is held, *e.g.* how the proceeds of the auction would be distributed to each class. The BA also expressed concern that the Plan could have been misleading to creditors because the Default Provision did not make clear that in the event of liquidation, classes other than CFC may not receive any distribution.

  c. The absence of a distribution scheme in the Default Provision of the Plan would have made distribution confusing if the auction proceeds had been greater than the debt owed to CFC as first lienholder. That scenario would be rare in a failed Chapter 11 plan. Although the Plan did not explicitly advise each class that it may not receive full payment in the event of a liquidation, those classes are not exempt from the operation of the Default Provision.

  d. The Plan had a primary goal of reorganization, but not all Chapter 11 plans result in reorganization. Liquidation plans are authorized under 11 U.S.C. § 1123(b)(4), and should be allowed so long as creditors receive sufficient notice that liquidation may occur. *See In re Naron & Wagner, Chartered*, 88 B.R. 85, 89 (Bankr. D. Md. 1988).

> [I]f the purpose of a debtor in proposing the sale of assets within a Chapter 11 proceeding is to dispose of all or a substantial portion of debtor's business and thus prevent reorganization, parties in interest are entitled to notice of that result from the proposed action so they may know to protect any interests they may have in the continuation of the business. If parties in interest are provided copies of a liquidation plan under Chapter 11 with the right to object to confirmation, . . . then this protection is provided.

*Id.*

  e. By accepting the Plan, including the Default Provision, creditors received notice of at least the possibility that the Plan may result in a liquidation of all the Debtor's assets. Further, a confirmed plan of reorganization is not a guarantee of performance. A confirmed plan has risks just as any financial contract.

  f. Similarly, the fact that liquidation under the Default Provision did not result in full payment to each class does not preclude the estate from being fully administered and the Plan from being substantially consummated.

g. The claims of each class under the Plan have not been affected in any way by the Debtor's compliance with the Default Provision. If this case is closed, the Plan shall serve as the contract under which each creditor is owed any unpaid distributions. Closing the case and letting the Plan govern what remains due to each class will provide each creditor with a sum certain of what it is owed, should any creditor attempt to pursue its claim in state court.[3] If the case is dismissed, the creditors are left wondering how the bankruptcy affected their claims and to what extent. The best thing the court can do for these creditors is to remove that uncertainty. The closing, and not dismissal, of the case under § 350 will be more beneficial to the creditors; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The BA's Motion to Dismiss is denied; and

2. The court shall enter a Final Decree and close the Debtor's case.

END OF DOCUMENT

---

[3] The court recognizes that this scenario is not likely, given that the Debtor has sold all its assets; however, should assets somehow become available to creditors, the Plan will provide the simplest and most certain way of ascertaining what is owed.